UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JOAN NAJBAR,                                      Case No. 09-CV-3143 (PJS/RLE)

              Plaintiff,

v.                                                                    ORDER GRANTING
                                                            MOTION TO DISMISS
THE UNITED STATES,

              Defendant.

---

Jeff H. Eckland, Mark J. Blando, Timothy M. Connelly, and Kate H. Kennedy, ECKLAND & BLANDO LLP, for plaintiff.

Mary Jo Madigan, UNITED STATES ATTORNEY'S OFFICE, for defendant.

Plaintiff Joan Najbar contends that the federal government committed various state-law torts when a letter that she sent to her son while he was serving in the United States Army in Iraq was returned to her stamped "deceased" even though her son was, in fact, alive. The government moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. For the reasons that follow, the Court grants the motion and dismisses the case.

I. BACKGROUND

According to Najbar's complaint (which the Court takes as true for purposes of ruling on the government's motion), Najbar's son served in the United States Army in Iraq in 2006 and 2007. In September 2006, Najbar sent him a letter via the United States Postal Service. A few weeks later, the letter was returned to her by the Postal Service, and the word "DECEASED" (in all capital letters) was stamped in red ink on the envelope. Compl. ¶¶ 5-7.

Until she received the letter, Najbar had no reason to believe that her son had died. She became very upset upon receiving the letter and reading the "deceased" stamp. After failing to get information from the Postal Service about the letter, she soon learned from the Red Cross that her son was still alive. *Id.* ¶¶ 10-11, 14-15.

Najbar was already under the care of a psychiatrist when she received the letter. *Id.* ¶ 12. After she received the letter, though, Najbar's psychological problems got worse. *Id.* ¶ 13. Subsequently, she suffered emotional distress with accompanying physical manifestations, sought medical treatment for her condition, and lost income. *Id.* ¶¶ 18, 26.

Najbar filed an administrative claim for compensation with the Postal Service. The Postal Service denied the claim both initially and on request for reconsideration. *Id.* ¶¶ 20, 24. Najbar then brought this suit against the federal government. She asserts state-law claims that her complaint denominates as "intentional infliction of emotional distress," "negligence," "negligent infliction of emotional distress," and "negligence per se." Compl. Counts 1-4.

## II. DISCUSSION

### A. *Standard of Review*

The appropriate standard for review of a Rule 12(b)(1) motion depends on the nature of the motion. When a defendant challenges the factual basis of the court's subject-matter jurisdiction — that is, when the defendant alleges that under the facts as they *actually exist* the court does not have subject-matter jurisdiction — the court may take evidence and decide any disputed issues of fact that relate to the existence of subject-matter jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 & 730 (8th Cir. 1990). But when a defendant makes a so-called "facial attack" under Rule 12(b)(1) — that is, when the defendant argues that under the

facts as they are *alleged in the complaint* the court does not have subject-matter jurisdiction —
the court treats the factual allegations in the complaint as true and determines whether those
allegations are sufficient to establish subject-matter jurisdiction. *Id.* at 729 n.6 (internal
quotation marks omitted); *see also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th
Cir. 1980).

In this case, the government brings a facial challenge to subject-matter jurisdiction. The
Court therefore considers whether, as a matter of law, the Court would have subject-matter
jurisdiction if all of the factual allegations in Najbar's complaint were true. *Cf. Bear Medicine v.
United States*, 241 F.3d 1208, 1213 (9th Cir. 2001) ("A district court's determination that it lacks
subject matter jurisdiction under the FTCA . . . [is] reviewed *de novo*.").

### B. Exceptions under the Federal Tort Claims Act

Najbar brings four state-law tort claims against the United States and seeks damages for
physical and emotional distress, medical expenses, and lost income. State-law tort claims
against the federal government are generally permitted under the Federal Tort Claims Act
("FTCA"), which provides subject-matter jurisdiction over

> civil actions on claims against the United States, for money
> damages . . . for injury or loss of property, or personal injury or
> death caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope of his
> office or employment, under circumstances where the United
> States, if a private person, would be liable to the claimant in
> accordance with the law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b)(1). The FTCA thus waives, in part, the federal government's sovereign
immunity, which would otherwise prohibit state-law tort suits against the federal government.
*See United States v. Dalm*, 494 U.S. 596, 608 (1990) (discussing federal sovereign immunity).

As noted, the FTCA does not entirely waive the federal government's sovereign immunity. Specifically, 28 U.S.C. § 2680 carves out various types of claims from the FTCA's sovereign-immunity waiver and effectively deprives district courts of jurisdiction over those carved-out claims. Two subsections of § 2680 are relevant to this case. First, subsection (b) forecloses "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). Second, subsection (h) forecloses "[a]ny claim arising out of . . . misrepresentation . . . ." 28 U.S.C. § 2860(h).

The government contends that Najbar's claims fall within both of these exceptions and that, as a result, the Court lacks subject-matter jurisdiction. The Court disagrees with respect to the postal-matter exception (subsection (h)), but agrees with respect to the misrepresentation exception (subsection (b)).

1. The Postal-Matter Exception

Najbar's claims stem from the return to her by the United States Postal Service of a letter that she had sent her son — a letter that, when it was returned, bore a stamp saying "deceased." According to the government, § 2860(h) applies because Najbar essentially asserts that the letter was "damaged or mishandled." Def. Reply Mem. at 2 [Docket No. 11].

Section 2860(h) does not actually use the words "damaged" or "mishandled." Rather, the statute precludes claims arising from three causes: the "loss" of mail, the "miscarriage" of mail, and the "negligent transmission" of mail. 28 U.S.C. § 2860(h). The Supreme Court interpreted this very language in *Dolan v. United States Postal Service*, 546 U.S. 481 (2006).

The plaintiff in *Dolan* sued the Postal Service for injuries she received when she tripped over a package that had been left on her front porch. *Id.* at 483. *Dolan* rejected the

government's argument that the plaintiff's claim arose from negligent transmission of the mail and was therefore barred under § 2860(h). *Id.* at 486-87. *Dolan* noted that "[i]f considered in isolation, the phrase 'negligent transmission' could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail," including the kind of acts alleged by the plaintiff. *Id.* at 486. But *Dolan* embraced a "narrower reading" of the statutory language and held that "'negligent transmission' does not go beyond negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address." *Id. Dolan* also explained that the words "lost" and "miscarried" have their ordinary meaning: "mail is 'lost' if it is destroyed or misplaced and 'miscarried' if it goes to the wrong address." *Id.* at 487.

Najbar's letter was not lost, nor was it miscarried. (If the "deceased" stamp had been accurate, the Postal Service's delivery would have likewise been accurate). And given *Dolan*'s discussion of "negligent transmission," the Court finds that the "deceased" stamp on the letter is not the kind of "damage" to postal matter that qualifies as "negligent transmission." *Dolan* described § 2860(h) as reaching harms of the sort "primarily identified with the Postal Service's function of transporting mail throughout the United States," and offered the "shattering of shipped china" as an example of a claim arising from the delivery of mail "in damaged condition . . . ." *Id.* at 489. When, as in this case, a claim is based not on damage to the contents of an envelope or package but only to markings on the exterior of the envelope or package, the claim does not arise from the "negligent transmission" of mail and does not fall within § 2680(h). *Cf. Barbieri v. Hartsdale Post Office*, 856 F. Supp. 817, 818 (S.D.N.Y. 1994) (rejecting application of § 2860(h) to claim arising from "an allegedly erroneous postmark which plaintiff claims led to a tax penalty").

2. The Misrepresentation Exception

The government also argues that Najbar's claims are barred by 28 U.S.C. § 2860(h), which precludes claims "arising out of . . . misrepresentation . . . ." 28 U.S.C. § 2860(h). The government's argument is straightforward: Najbar alleges that she suffered damages when the government, by returning her letter stamped "deceased," effectively — and inaccurately — told her, "Your son has died." To say that a person is dead when the person is alive is to make a misrepresentation, and thus (says the government) Najbar's claims fall within § 2860(h).

Najbar makes two arguments in response. First, Najbar denies that her claim arises out of a misrepresentation in any sense of the word. Rather, says Najbar, her claim is based on "actionable negligence [that] occurred at an operational level before the envelope was stamped 'DECEASED.'" Pl. Mem. Opp. Mot Dism. at 14 [Docket No. 10]. Second, Najbar argues that even if her claim is one for misrepresentation, it is for a *type* of misrepresentation that does not fall within § 2860(h). *Id.* at 15-20. The Court rejects both arguments.

With respect to the first argument, it is true that the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block v. Neal*, 460 U.S. 289, 297 (1983). This principle does not help Najbar, however, because her action focuses squarely on "the Government's failure to use due care in communicating information."

Najbar's alleged damages were caused by the delivery of a letter stamped "deceased." This is clear from the complaint, which asserts that "[u]pon viewing the 'DECEASED' stamp on the letter, Ms. Najbar became extremely distressed," and that "[a]s a result of receiving the letter

indicating that her son was dead, Ms. Najbar suffered emotional distress with physical manifestations." Compl. ¶¶ 11, 18. Obviously, Najbar did not become "extremely distressed" because the letter had not reached her son or because the envelope had been defaced with red ink. Najbar became "extremely distressed" because the government was telling her, by returning the envelope stamped "deceased," that her son was dead. Had Najbar never seen the letter, or had she seen the letter only after having been warned by the government that someone mistakenly stamped "deceased" on a letter to her son but he was in fact alive, she would not have suffered any damages.

It is therefore absurd to allege, as Najbar does, that "the communication of the information [about her son's alleged death] was collateral to the alleged wrong." Pl. Mem. Opp. Mot. Dism. at 13. As the complaint itself makes clear, the "communication of information" was *central* to "the alleged wrong." Without the "communication of information," there would not have *been* an "alleged wrong." Najbar would not have been injured, and she would have no claim against the federal government.

This case is thus very different from *Mundy v. United States*, 983 F.2d 950 (9th Cir. 1993), the sole case on which Najbar relies in arguing that her claim is for operational, precommunication negligence rather than for negligence in communicating information. The plaintiff in that case, Mundy, was fired by a defense contractor after the government denied his security clearance, and he sued the government for negligently denying the clearance. *Id.* at 951-52. According to Mundy, if the government had not misfiled a document, it would have granted him the requested clearance. *Id.* at 951. The Ninth Circuit held that the FTCA's misrepresentation exception did not bar the claim because the claim "focuse[d] on the

performance of an operational task — the processing of a requested security clearance — rather than the communication of information." *Id.* at 952. Crucially, the court noted that "the communication *was not a misrepresentation*: the security clearance in fact had been denied." *Id.* (emphasis added). This case, by contrast, is "focuse[d] on . . . the communication of information," and the communication at issue in this case — the "deceased" stamp, which communicated to Najbar that her son had died — was a misrepresentation.

Najbar further argues that the misrepresentation exception does not apply because this case, if it involves a misrepresentation, does not involve the *type* of misrepresentation that is the subject of the exception. According to Najbar, the misrepresentation exception in § 2860(h) applies only to claims seeking to recover for commercial damage resulting from reliance by a plaintiff on a misrepresentation by the government. Pl. Mem. Opp. Mot. Dism. at 15.

The FTCA's misrepresentation exception certainly reaches commercial claims, but there is little reason to think that it reaches *only* commercial claims. Fifty years ago, the Supreme Court in *United States v. Neustadt* held that Congress intended the misrepresentation exception to reach "the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation'" — that is, a claim by a party arising from the government's "breach of . . . the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs . . . ." 366 U.S. 696, 706 (1961). In support of this holding, the Court cited § 552 of the first Restatement of Torts, published in 1938, as well as the 1941 edition of Prosser's treatise on torts. *Id.* at 706 n.16.

Twenty-two years after *Neustadt,* the Supreme Court — quoting *Neustadt* quoting Prosser — said in a footnote in *Block v. Neal*:

> The "misrepresentation" exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which "'has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'"

460 U.S. at 296 n.5 (quoting *Neustadt*, 366 U.S. at 711 n.26, in turn quoting Prosser, *Torts* § 85, "Remedies for Misrepresentation," at 702-03 (1941 ed.)).

Taken out of context, the quoted portions of *Block* and *Neustadt* could be read to support Najbar's assertion that, because she does not seek to recover for commercial injury, her claim is not barred by the FTCA's misrepresentation exception even if it is a claim for misrepresentation. But the context makes clear that *Block* and *Neustadt* were simply describing, in elliptical fashion, the most-common types of misrepresentation claims. Indeed, the very language from Prosser's treatise quoted in *Neustadt* and then in *Block* spoke of misrepresentation claims being "'very largely'" — but not exclusively — limited to claims seeking recovery for commercial injury. *Neustadt*, 366 U.S. at 711 n.26 (quoting Prosser, *Torts* § 85, "Remedies for Misrepresentation," at 702-03 (1941 ed.)). And *Block* itself said that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." 460 U.S. at 296. This formulation of the "essence" of misrepresentation is not limited to commercial misrepresentations. Finally, neither *Neustadt* nor *Block* involved a claim for noncommercial misrepresentation, and thus neither case could have held that such claims were outside the scope of the FTCA's misrepresentation exception. The question was simply not before the Court.

Najbar argues, in effect, that when Congress declared "misrepresentation" claims off-limits under the FTCA, it intended to reach only a subset of misrepresentation claims. In other

words, Najbar argues that, in enacting § 2850(h), Congress essentially said: "The government cannot be sued for a misrepresentation that causes commercial loss, but it can be sued for a misrepresentation that causes physical or emotional injury."

But Congress said no such thing. Congress used the word "misrepresentation," and that word is broad enough to reach all types of claims for misrepresentation, whether those claims seek recovery for commercial injury, physical injury, or emotional injury. Further, the word is broad enough to reach a claim based on a misrepresentation regardless of how, or even whether, the plaintiff relied on the misrepresentation. The Court therefore rejects Najbar's (dubious[1]) argument that her claim does not fit within the misrepresentation exception because the injuries she suffered were not caused by her reliance on the "deceased" stamp. *See* Pl. Mem. Opp. Mot. Dism. at 18-20.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendant the United States of America to dismiss for lack of subject-matter jurisdiction [Docket No. 6] is GRANTED.

---

[1]The Court is highly skeptical of the factual premise of Najbar's argument — namely, that she did not rely on the misrepresentation. According to the complaint, when Najbar saw the "deceased" stamp, she believed that her son might have died. Compl. ¶¶ 13, 15. She would not have been injured — and she would have no claim against the government — if the "deceased" stamp had not caused her to believe that her son might have died. To believe an assertion is to rely (at least mentally and psychologically) on the assertion's truth, even if one does not act on that belief.

-10-

2. Plaintiff's complaint is DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 15, 2010     s/Patrick J. Schiltz
                         Patrick J. Schiltz
                         United States District Judge